**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **GARJON COLLINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 5:15-05576** |
| | ) | |
| **DAVID LEMASTER**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the following: (1) Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Document No. 2), filed on May 4, 2015; (2) Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 15), filed on July 20, 2015; and (3) Defendants' "Motion to Dismiss Amended Complaint, or in the Alternative, Motion for Summary Judgment" (Document No. 22), filed on August 13, 2015. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document Nos. 17 and 27.) Plaintiff filed his Response in Opposition on September 11, 2015. (Document No. 29.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion should be granted and Plaintiff's Motion should be denied.

**FACTUAL AND PROCEDURAL HISTORY**

On May 4, 2015, Plaintiff, acting *pro se* and an inmate at FPC Beckley, filed his Complaint in this matter seeking relief pursuant to the Americans with Disabilities Act ["ADA"],

42 U.S.C. § 12131, *et seq.*, and the Rehabilitation Act of 1973 ["RHA"].[1] Plaintiff named the following as defendants: (1) David LeMaster; and (2) J. Coakley. (Document No. 2.) In his Complaint, Plaintiff alleges that he "has been subjected to unreasonable accommodations and undue hardship" and "has been excluded from participation in several programs and activities solely by reason of his disability." (Id., p. 3.) Plaintiff explains that he is disabled based upon "chronic dizziness" and "partial paralysis on his left side." (Id., p. 4.) Plaintiff contends that there is only one handicap toilet and shower in his section of the housing unit, and it has been closed for repairs since March 3, 2015. (Id.) Plaintiff complains that "[d]ue to strict phase 2 policies initiated by Camp Administrator J. Master, [Plaintiff] has very limited access to the handicap toilet outside his housing unit." (Id.) Next, Plaintiff alleges that Defendants refuse to assign him a "wheelchair pusher." (Id.) Plaintiff explains that since he does not have an assigned "wheelchair pusher," he is required "to wait for another inmate to push his wheelchair to the education department so he can use the toilet" and he "has been excluded from participation in some programs and activities." (Id., pp. 4 - 5.) Plaintiff contends that he has attempted to exhaust his available administrative remedies. (Id., pp. 1 - 2, 5.) As relief, Plaintiff requests a temporary restraining order and a preliminary injunction. (Id.)

As Exhibits, Plaintiff attaches the following: (1) A copy of a "Memorandum for Camp Inmate Population" dated February 20, 2015, from Camp Administrator David LeMaster regarding the "Implementation of Restriction for Camp Operations" (Id., p. 6.); (2) A copy of Plaintiff's "Request to Staff" dated March 4, 2014, regarding repairs of the handicap bathroom

---

[1]    Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

(Id., p. 7.); (3) A copy of Plaintiff's "Request to Staff" dated March 3, 2015, regarding his request for BP-11 forms (Id., p. 8.); (4) A copy of USPS Tracking (Id., pp. 9 - 10.); (5) A copy of a "Certified Mail Receipt" addressed to this Court (Id., p. 11.); and (6) A copy of Plaintiff's "Request to Staff" dated March 29, 2015, regarding repairs to the bathroom sink (Id., p. 12.).

By Order entered on May 6, 2015, United Magistrate Judge R. Clarke VanDervort granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 4.) On July 20, 2015, Defendants filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 15 and 16.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on July 21, 2015, advising him of the right to file a response to the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 17.)

On July 27, 2015, Plaintiff filed his Motion to Clarify and Amend Complaint. (Document No. 18.) On August 6, 2015, Plaintiff filed an additional Motion to Clarify and Amend Complaint. (Document No. 19.) The undersigned notes that Plaintiff's second Motion to Clarify and Amend appears to be identical to his first Motion to Clarify and Amend.[2] (Id.) In his

---

[2] Plaintiff appears to allege that the BOP has violated his right to Equal Protection because a white inmate was assigned a wheelchair pusher, but Plaintiff was not. The relevant equal protection cases provide a basic three-step analysis to determine whether an inmate's right to equal protection has been violated. First, the inmate must produce evidence to show that he was treated differently than other similarly situated inmates. See Durso v. Rowe, 579 F.2d 1365, 1371 (7th Cir. 1978). Second, the inmate must show that she was intentionally singled out for harsher treatment. See Brandon v. District of Columbia Bd. of Parole (I), 734 F.2d 56, 60 (D.C. Cir. 1984); Stringer v. Rowe, 616 F.2d 993, 998 (7th Cir. 1980). Third, if the inmate was purposefully singled out, the analysis can take one of two paths. The first path is taken if the inmate can show that the prison's motivation in effecting its differential treatment implicates a suspect classification or a fundamental right. If this is established, the Court must strictly scrutinize the prison's actions. See O'Bar v. Pinion, 953 F.2d 74, 81-82. The prison must show that the

3

Amended Complaints, Plaintiff alleges that Defendants violated his rights under the Fifth and Eighth Amendments. (Id.) First, Plaintiff alleges that the restrictions imposed upon the inmate population constitute an atypical hardship in violation of his due process rights under the Fifth Amendment. (Id.) Second, Plaintiff alleges that the conditions of his confinement constituted cruel and unusually punishment under the Eighth Amendment. (Id.) Finally, Plaintiff continues to assert that Defendants are violating his rights under the ADA. (Id.) [3]

---

classification is narrowly tailored to a compelling governmental interest. *Id.* If the prison's reason for the differential treatment does not implicate a suspect class or a fundamental right, the analysis takes the second path. *See Brandon* (I), 734 F.2d at 60, *Brandon v. District of Columbia Bd. of Parole* (II), 823 F.2d 644, 650 (D.C. Cir. 1987). On this path, the differential treatment is subject only to rational basis review. *See O'Bar*, 953 F.2d at 81-82. A rational basis review requires that the government's decision to treat similarly situated individuals differently bear some rational relationship to a legitimate State purpose. *See id.* at 81; *Brandon* (I), 734 F.2d at 60; *Brandon* (II), 823 F.2d at 650.

The undersigned finds no indication that Plaintiff was treated differently than another similar-situated inmate. The record reveals that medical staff advised Plaintiff that he could have a wheelchair pusher as a convenience, but that it was not medically necessary. Upon evaluation, medical staff noted that Plaintiff was capable "able to use the wheelchair without assistance using both arms" and was "able to stand up, remove his coat and sit back down." (Document No. 22-1, pp. 6 - 8.) Furthermore, Plaintiff can ambulate short distances and perform all activities of daily living without assistance. (*Id.*) There is no indication the white inmate is similarly situated to Plaintiff in his physical abilities. Plaintiff conclusory allegation that a white inmate was provided a wheelchair pusher is insufficient. Further, Plaintiff cannot show that he was intentionally singled out for harsher treatment. Accordingly, the undersigned finds that Plaintiff has failed to state a claim for denial of equal protection of the law.

[3] To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. *See Board of Regents v. Roth*, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(*quoting Roth*, 408 U.S. at 577, 92 S.Ct. 2709). In *Gaston*, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." *Id.* at 343. The Supreme Court held in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due

On August 13, 2015, Defendants filed their "Motion to Dismiss, or in the Alternative,

Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 22 and 23.)

Defendants argue that Plaintiff's claims should be dismissed because: (1) "The ADA does not

---

Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. *Id.*, 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. *Id.*

To the extent Plaintiff alleges a liberty interest in retaining his commissary and television privileges, the undersigned finds that Plaintiff's claim is without merit. (Document No. 29, pp. 14 – 15.) The denial of privileges and confinement in segregation are matters clearly contemplated by Plaintiff's original sentence. *See Gaston*, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); *Hatch v. District of Columbia*, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); and *Gholson v. Murry*, 953 F. Supp. 709, 716 (E.D.Va. 1997)(finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in relation to the ordinary incidents of prison life). Furthermore, it is well established that an inmate has no absolute right to privileges. *See Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 109, S.Ct. 1904, 104 L.Ed.2d 506 (1989)("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence and therefore is not independently protected by the Due Process Clause."); *Smith v. Roper*, 12 Fed.Appx. 393, 396 (7th Cir. 2001), *cert. denied*, 534 U.S. 1093, 122 S.Ct. 839, 151 L.Ed.2d 718 (2002)("In light of *Sandin*, the deprivations that Smith suffered as a result of the disciplinary proceedings - namely, 22 days in segregation, a six-month loss of privileges associated with his demotion to C class, and six days without phone privileges - do not implicate a liberty interest."); *Freitas v. Ault*, 109 F.3d 1335, 1337-38 (8th Cir. 1997)(finding that an involuntary transfer to a higher-security facility and loss of work and phone privileges did not constitute atypical and significant hardship); *Alkebulanyahh v. Ozmint*, 2009 WL 2043912, *9 (D.S.C. July 13, 2009), *aff'd*, 358 Fed.Appx. 431 (4th Cir. 2009)("[P]rison visitation does not implicate the standard set forth in *Sandin*."); *Principio v. McGinnis*, 2007 WL 2344872, * 2 (W.D.N.Y. Aug. 15, 2007)(finding that "60 days of keeplock with loss of telephone, packages, recreation and conjugal visits," was not an atypical or significant hardship); *James v. Odom*, 2000 WL 1136563 *5 (S.D.Ala. May 30, 2000)(finding a 45-day restriction on inmate's "store, phone, and visiting privileges" did not constituted an atypical or significant hardship). Accordingly, to the extent that Plaintiff is claiming his liberty interest in retaining commissary and television privileges were violated, the undersigned finds that Plaintiff's claim is without merit.

5

apply to the instant case" (Document No. 23, p. 8.); (2) "Plaintiff failed to exhaust administrative remedies under the PLRA" (Id., pp. 9 - 16.); (3) "There are no individual capacity claims under the Rehabilitation Act" (Id., p. 16.); (4) "Plaintiff's request for injunctive relief regarding the phase restrictions is moot" (Id., pp. 16 - 17.); (5) "Plaintiff's equal protection claim is insufficient and does not state a claim for which relief can be granted" (Id., p. 17.); (6) "Plaintiff's equal protection claim is insufficient and does not state a claim for which relief can be granted" (Id., pp. 17 - 18.); (7) "Plaintiff's due process claim is insufficient and does not state a claim for which relief can be granted" (Id., pp. 18 - 19.); (8) "Plaintiff's Eighth Amendment claim is insufficient and does not state a claim for which relief can be granted" (Id., pp. 19 - 20.); and (9) "The Defendants are entitled to qualified immunity" (Id., pp. 21 - 24.)

As Exhibits, Defendants attach the following: (1) The Second Declaration of Sarah Lilly (Document No. 22-1, pp. 2 - 4.); (2) A copy of the Clinical Encounter dated November 18, 2014 (Id., pp. 6 - 9.); (3) A copy of Updated SENTRY Administrative Remedy History (Id., pp. 11 - 25.); (4) A copy of Remedy Id No. 806097 (Id., pp. 27 - 33.); (5) A copy of the Declaration of David LeMaster (Document No. 22-2, pp. 2 - 4.); (6) A copy of a Memo dated February 20, 2015, regarding the "Implementation of Restriction for Camp Operations" (Id., p. 7.); (7) A copy an e-mail dated February 27, 2015, concerning camp restrictions (Id., pp. 9 - 10.); (8) A copy of a Memo dated March 2, 2015, regarding the "Modification of Phase II" (Id., p. 12.); (9) A copy of a Memo dated March 10, 2015, regarding "Phase I" (Id., p. 14.); and (10) A copy of Memo dated March 30, 2015 (Id., p. 16.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on August 14, 2015, advising him of the right to file a response to the Defendants'

"Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 27.) On August 17, 2015, Plaintiff filed his third Motion to Amend Complaint. (Document No. 28.) On September 11, 2015, Plaintiff filed his Response in Opposition to the Defendants' "Motion to Dismiss Amended Complaint, or in the Alternative, Motion for Summary Judgment." (Document No. 29.)

As Exhibits, Plaintiff attached the following: (1) A copy of Plaintiff's Affidavit (Id., pp. 13 and 28.); (2) A copy Plaintiff's "Request for Administrative Remedy" dated March 10, 2015 (Remedy Id No. 815097-F1) (Id., p. 14.); (3) A copy of Plaintiff's "Request to Staff" dated March 9, 2015 (Id., p. 15.); (4) A copy of Warden Joe Coakley's Response to Plaintiff's "Request for Administrative Remedy" (Remedy Id No. 815097-F1) (Id., p. 16.); (5) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated April 21, 2015 (Id., pp. 17 - 18.); (6) A copy of Regional Director J.F. Caraway's Response dated May 8, 2015 (Remedy Id No. 815097-R1) (Id., p. 19.); (7) A copy of the "Receipt - Administrative Remedy" dated July 1, 2015, from the Central Office Administrative Remedy Coordinator (Remedy Id No. 815097-A1) (Id., p. 20.); (8) A copy of Warden Coakley's Response dated January 30, 2015 (Remedy Id No. 806097-F1) (Id., p. 21.); (9) A copy of Plaintiff's "Request for Administrative Remedy" dated December 16, 2014 (Remedy Id No. 806097-F1) (Id., pp. 22 - 23.); (10) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated February 11, 2015 (Id., p. 24.); (11) A copy of Regional Director Caraway's Response dated February 24, 2015 (Remedy Id No. 806097-R1) (Id., p. 25.); (12) A copy of the "Extension of Time for Response - Administrative Remedy" dated April 29, 2015, from the Central Office Administrative Remedy Coordinator (Remedy Id No. 806097-A1) (Id., p. 26.); (13) A copy of an e-mail to the DSCC Administrator dated

7

November 4, 2014, from Plaintiff complaining about "Inadequate Treatment" (<u>Id.</u>, p. 27.); and (14) A copy of Plaintiff's "Motion to Amend Complaint" (<u>Id.</u>, pp. 29 - 31.).

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(<u>quoting</u> <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's

claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## <u>DISCUSSION</u>

### 1.   <u>ADA</u>:

In their Motion, Defendants argue that Plaintiff's claim under the ADA must be dismissed. (Document No. 23, pp. 8 - 9.) Specifically, Defendants state that "[t]o the extent the Plaintiff claims discrimination in the operation of a public program in violation of Title II of the ADA, the ADA does not apply to the federal government, its agencies, or employees. (<u>Id.</u>) In Response, Plaintiff argues that the "ADA applies to the instant case in its nexus to the Eighth Amendment when determining what constitutes cruel and unusual punishment." (Document No. 29, p. 4.)

9

It is well established that the ADA does not apply to the federal government, its agencies, or employees. 42 U.S.C. § 12111(5)(B)(i); <u>Jones v. American Post Workers Union</u>, 192 F.3d 417, 424 (4th Cir. 1999)("both the ADA and Title VII's definition of employer expressly exclude the United States or a corporation wholly owned by the government of the United States); <u>Luna v. Roche</u>, 89 Fed.Appx. 878, 881 n. 4 (5th Cir. 2005)(finding that the ADA does not apply to the federal government); <u>Sarvis v. United States</u>, 2000 WL 1568230, * 2 (2nd Cir. 2000)(ADA does not apply to the federal government); <u>Foreman v. Unnamed Officers of the Federal Bureau of Prisons</u>, 2010 WL 2720817, * 3 (D.Md. July 7, 2010)(finding that the ADA does not apply to the federal government, its agencies, or employees). Based upon the foregoing, undersigned respectfully recommends that Defendants' "Motion to Dismiss Amended Complaint, or in the Alternative, Motion for Summary Judgment" be granted as to Plaintiff's ADA claim.

**2.** **Exhaustion of Administrative Remedies:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[4] <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other

---

[4]   42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the

complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the

defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in <u>Anderson</u>, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

Proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." <u>Dale v. Lappin</u>, 376 F.3d at 655 (internal citations omitted); <u>also</u> <u>see</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. <u>Id.</u> Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution

13

staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

## A. *Restrictions:*

In their Motion, Defendants first contend that Plaintiff did not exhaust his administrative remedies regarding his claim concerning the restrictions imposed at FCI Beckley. (Document No. 23, pp. 10 - 11.) Defendants acknowledge that Plaintiff began the grievance process regarding the foregoing issue in Administrative Remedy No. 815097. (Id.) Defendants, however, contend that Plaintiff initiated the foregoing action prior to fully exhausting his remedies. (Id.) In

14

Response, Plaintiff contends that he exhausted his remedies because he filed his appeal to the Central Office on May 27, 2015, and he amended his Complaint on July 27, 2015. (Document No. 29, p. 5.) Plaintiff argues that his remedies were considered exhausted when the Central Office failed to timely respond to his appeal. (Id.)

Based upon a review of the record, the undersigned finds that Plaintiff failed to fully exhaust his administrative remedies regarding the alleged restrictions imposed at FCI Beckley. Plaintiff filed his Request for Administrative Remedy on March 25, 2015, complaining about the implementation of the Phase restrictions, which initiated the grievance process (Remedy Id No. 815097-F1). By Response dated April 14, 2015, the Warden advised Plaintiff that his Request for Administrative Remedy was closed with an explanation and he could appeal to the Regional Director if he was dissatisfied with the response. On April 28, 2015, Plaintiff filed his "Regional Administrative Remedy Appeal" (Remedy Id No. 815097-F1). By Response dated May 8, 2015, the Regional Director determined that the Warden's decision was appropriate and advised Plaintiff that he could appeal to General Counsel if he was dissatisfied with the response. (Id.) Plaintiff, however, filed his Complaint initiating this action on May 4, 2015. The undersigned finds that the Regional Director's Response was not untimely as he had 30 days to file his Response. 28 C.F.R. § 542.18. Even assuming the Regional Director's Response to be untimely, Plaintiff's appropriate action would have been to have considered the absence of a response as a denial and proceed to the next level by filing his appeal to the Central Office. To the extent Plaintiff argues that he amended his Complaint after fully exhausting his remedies, such an amendment does not cure his failure to exhaust prior to filing suit. See Hoffenberg v. Provost, 154 Fed.Appx. 307, 310 (3rd Cir. 2005)(finding that the date of the amended complaint cannot

serve as the date the federal suit was "instituted")(<u>citing</u>, <u>McNeil v. United States</u>, 508 U.S. 106, 111-12, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993)); <u>Patterson v. Potope</u>, 2013 WL 1314050 (M.D.Pa. March 28, 2013)(finding that "Plaintiff's reliance on his motions to amend and to supplement, and on his amended complaint, which were filed after the agency claim was denied, is misplaced"); <u>Brown v. Hendershot</u>, 2006 WL 2707432 (M.D.Pa. Sept. 19, 2006)("The filing of an amended complaint does not cure the defect.") Accordingly, the undersigned finds that Plaintiff failed to fully exhaust his administrative remedies regarding the alleged restrictions imposed at FCI Beckley.

**B.    *Conditions of Confinement and Unavailability of Showers or Restroom Facilities*:**

In their Motion, Defendants next contend that Plaintiff did not exhaust his administrative remedies regarding his claims concerning alleged unconstitutional conditions of confinement and the unavailability of shower or restroom facilities. (Document No. 23, p. 11.) Defendants argue that "Plaintiff has not filed any administrative remedies alleging unconstitutional conditions of confinement or deliberate indifference in violation of the Eighth Amendment right to be free from cruel and unusual punishment." (<u>Id.</u>) In support, Defendants submit the Declaration of Ms. Sarah Lilly, a Legal Assistant for the Consolidated Legal Center at FCI Beckley. (Document No. 22-1.) Ms. Lilly states that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (<u>Id.</u>) Specifically, Ms. Lilly states as follows in her Declaration:

7.      I have reviewed Plaintiff's administrative remedy history on SENTRY and his remedy requests and responses relevant to this case.

* * *

13.     Plaintiff has not filed any administrative remedies regarding the

16

unavailability of shower or restroom facilities.

      14.    Plaintiff has not filed any administrative remedies alleging unconstitutional conditions of confinement.

(Id., pp. 2 - 3.) In Response, Plaintiff states that the foregoing claim was exhausted in Administrative Remedy No. 815097. (Document No. 29, p. 5.) Plaintiff explains that his claim "regarding unavailability of toilets and showers was mentioned in the Attachment to his "Request for Administrative Remedy" and "he clarified his allegations of unconstitutional conditions by asking for relief from Eighth Amendment violations" in his Central Office appeal. (Id.)

As stated above, Plaintiff did not fully exhaust his Administrative Remedy No. 815097 prior to initiating this action. Furthermore, claims are precluded if not raised at all three levels of the administrative remedy process. Everett v. Francis, 2010 WL 1490479 (N.D.W.Va. April 13, 2010)(To exhaust a claim properly, it must be raised in all three steps), aff'd, 390 Fed.Appx. 266 (4th Cir. 2010); also see 28 C.F.R. § 542.15(b)(2)(an inmate may not raise in an appeal issues not raised in the lower level filings). Accordingly, the undersigned finds that Plaintiff failed to fully exhaust his administrative remedies concerning alleged unconstitutional conditions of confinement and the unavailability of shower or restroom facilities.

      *C.*     ***Request for a Wheelchair Pusher and Participation in Programs and Activities:***

In their Motion, Defendants contend that Plaintiff did not exhaust his administrative remedies regarding his request for a wheelchair pusher and for participation in certain programs and activities. (Document No. 23, p. 11.) Defendants argue that even though Plaintiff asserted his request for a wheelchair pusher in passing in Remedy Id No. 806097-F1, Plaintiff failed to assert this request at all levels. (Id.) In support, Defendants submit the Declaration of Ms. Lilly.

17

(Document No. 22-1.) Ms. Lilly states as follows in her Declaration:

15.    At the time he filed his original Complaint on May 4, 2015, Plaintiff had not filed any administrative remedies addressing specific programs or activities in which he could not participate due to his disability.

16.    On July 16, 2015, he filed Remedy ID No. 828344-F1 at the institution level, alleging denial of participation in vocational and educational programs or activities in which he could not participate due to his disability.

17.    This remedy was accepted but has not yet been answered, and Plaintiff has filed no other remedies since then.

18.    Plaintiff has not exhausted administrative remedies regarding specific programs or activities in which he cannot participate due to his disability.

19.    Plaintiff filed Remedy ID No. 806097-F1 at the institutional level on January 2, 2015, alleging that he suffered from chronic dizziness due to the altitude in West Virginia and requesting a transfer to another facility.

20.    At the institutional level, he also requested a wheelchair pusher so that he can participate in programs and activities.

21.    This remedy request was denied by the Warden on January 30, 2015.

22.    Plaintiff appealed the denial on February 18, 2015, by filing Remedy ID No. 806097-R1 at the Regional Office level.

23.    At that level, Plaintiff again stated that he suffered from constant dizziness and stated "I am unable to participate in programs due to Beckley's failure to accommodate my disability."

24.    Plaintiff stated nothing about any particular program in which he wished to participate, nor did not request or mention a wheelchair pusher.

25.    His requested relief was to "be transferred to a prison outside of the mountains."

26.    The request was denied by the Regional Director on February 24, 2015.

27.    Plaintiff appealed to the Central Office level by filing Remedy ID No. 806097-A1 on March 16, 2015.

28.    The remedy was accepted on April 16, 2015, and is pending a response.

(Id., pp. 3 - 4.) Accordingly, Defendants argue that Plaintiff failed to fully exhaust his administrative remedies concerning his request for a wheelchair pusher and participation in certain programs and activities. (Id.)

In Response, Plaintiff argues that there was a "15 day intentional delay by the institution in logging in the Administrative Remedy Request, if factored in, means Plaintiff would have exhausted Remedy ID # 806097-F1 on April 30, 2015, when he did not receive a response from the Central Office." (Document No. 29, p. 6.) Plaintiff complains that he "still has not received a response." (Id.)

Based upon a review of the record, the undersigned finds that Plaintiff failed to fully exhaust his administrative remedies regarding his request for a wheelchair pusher and participation in certain programs and activities. First, the undersigned finds nothing in the record to support Plaintiff's conclusory claim that staff delayed the filing of Remedy Id No. 806097-F1 at the institutional level. Furthermore, such alleged delay does not allow Plaintiff to deduct time from future response periods. If Plaintiff believed there was a delay at the institutional level, Plaintiff's remedy was to consider such a delayed response as a denial and proceed to the Regional level. Second, the record reveals that Remedy Id No. 806097-A1 was received by the Central Office on March 16, 2015. Section 542.18 provides that if the time period for a response to an appeal is insufficient to make an appropriate decision, the time for a response may be extended once by 20 days at the Central Office level. 28 C.F.R. § 542.18. Section 542.18 further provides that "staff shall inform the inmate of this extension in writing." Id. The record reveals that Plaintiff was notified of the "Extension of Time for Response" on April 29, 2015, by the Central Office Administrative Remedy Coordinator. (Document No. 29,

p. 26.) The notification indicated that Remedy Id No. 806097-A1 was received on March 16, 2015, and with the 20-day extension, the Central Office's Response would be due on May 15, 2015.[5] Section 542.18 further provides that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Plaintiff, however, filed his Complaint initiating this action on May 4, 2015, prior to expiration of the time period for the Central Office's Response. Accordingly, the undersigned finds that Plaintiff filed his Complaint prior to fully exhausting his administrative remedies concerning his claim for a wheelchair pusher and for participation in certain programs and activities.

   D.    *Rehabilitation Act Claims:*

        As stated above, Plaintiff has failed to exhaust his administrative remedies regarding his claim that he was denied the benefits of a program or activity based upon his disability. Thus, any claims raised by Plaintiff under the Rehabilitation Act should be dismissed based upon his failure to exhaust. See Zoukis v. Wilson, 2015 WL 4064682, * 10 (E.D.Va. July 2, 2015)(finding that lawsuits subject to the exhaustion requirement involve actions challenging any aspect of prison life, which includes actions raising Rehabilitation Act claims)(citing Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Haley v. Haynes, 2012 WL 112946, * 1 (S.D.Ga. Jan. 12, 2012("[T]he very language of 42 U.S.C. § 1997e(a) requires a prisoner to exhaust all available administrative remedies before he can bring a cause of action pursuant to . . . [any Federal law], which would include the [Rehabilitation Act]."); Toscani v.

---

[5]   Section 542.18 provides that a response shall be made by the General Counsel within 40 calendar days. With the 20-day extension of time, the Central Office had a total of 60 days to respond.

Litton, 2012 WL 7060753, * 6 (D.S.C. June 29, 2012)(PLRA exhaustion is required for Rehabilitation Act claims); Harding v. Green, 2012 WL 1203956, * 2 (D.Md. April 9, 2012)(exhaustion under the PLRA is required for claims under the Rehabilitation Act); Allen v. Carrington, 2009 WL 2877557, * 4 (D.S.C. Aug. 28, 2009)(finding that exhaustion under the PLRA is required for claims under the Rehabilitation Act)(citing O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1060-61 (9th Cir. 2007). Accordingly, the undersigned respectfully recommends that Defendants' "Motion to Dismiss Amended Complaint, or in the Alternative, Motion for Summary Judgment" be granted.[6] The undersigned finds it unnecessary to consider the other reasons which Defendants have submitted for dismissal.

**3.**      **Motion for Temporary Restraining Order and a Preliminary Injunction:**

Plaintiff requests a Temporary Restraining Order and Preliminary Injunction based upon Defendant's alleged violations of the ADA and the Rehabilitation Act. (Document No. 2.) Rule 65(b) of the Federal Rules of Civil Procedure sets forth the limited circumstances under which a temporary restraining order can be granted as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in Hoechst Diafoil Company v. Nan Ya Plastics Corporation, 174 F.3d

---

[6]   Since Plaintiff failed to exhaust he Rehabilitation Act claim under the PLRA, the undersigned finds it unnecessary to address whether Plaintiff exhausted his claim under 28 C.F.R. § 39.170.

411, 422 (4th Cir. 1999), as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held: '[U]nder federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.' <u>Granny Goose</u>, 415 U.S. at 439.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008).

Based upon the foregoing, the undersigned has recommended that Plaintiff's Complaint be dismissed as to all Defendants. Accordingly, the undersigned finds that Plaintiff's request for injunctive relief should be denied as he cannot establish that he is likely to succeed on the merits.

## <u>PROPOSAL AND RECOMMENDATION</u>

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' "Motion to Dismiss Amended Complaint, or in the Alternative, Motion for Summary Judgment" (Document No. 22), **DENY** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Document No. 2), **DENY as moot** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 15), **DISMISS** Plaintiff's Complaint (Document No. 2), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is

22

hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 25, 2016.

Omar J. Aboulhosn
United States Magistrate Judge

23